NOT FOR FULL-TEXT PUBLICATION
File Name: 08a0016n.06
Filed: January 8, 2008

No. 07-3201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JAMES H. BURKS, IV,                          )
                                             )
    Plaintiff-Appellant,                   )
                                             )
v.                                           )   ON APPEAL FROM THE UNITED
                                             )   STATES DISTRICT COURT FOR THE
YELLOW TRANSPORTATION, INC.,                 )   SOUTHERN DISTRICT OF OHIO
                                             )
    Defendant-Appellee.                    )
                                             )
                                             )
                                             )

Before: SILER, GIBBONS, and McKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant James H. Burks, IV, appeals the district court's grant of summary judgment to defendant-appellee Yellow Transportation, Inc., ("Yellow Transportation") on his claim of employment discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Specifically, Burks contends that the district court erred in concluding that he failed to present any evidence refuting Yellow Transportation's assertion that he was not promoted to a full-time position due to his poor performance and attitude. For the reasons that follow, we affirm the judgment of the district court.

1

I.

Yellow Transportation employed plaintiff-appellant Burks as an on-call dockworker, or "casual," from March 2004 to August 2004 at its Cincinnati, Ohio, terminal. Burks attended an orientation class on March 12, 2004, and began working as a casual on March 26, 2004; his last day of work was August 27, 2004.

Yellow Transportation provides transportation of goods and merchandise by truck and operates approximately 332 terminals throughout the United States. The company employs casual dockworkers on an as-needed basis to replace absent regular full-time dockworkers or to supplement its regular workforce during temporary periods of increased business. Casuals load and unload freight from trailers and move freight around the dock. The company maintains that there is no guarantee that a causal will be offered a full-time position, nor is there any set period of time a casual will typically work before being offered a full-time position. In fact, the company asserts, some casuals may work for years before they are offered full-time positions.

According to Yellow Transportation, dock supervisors and managers evaluate casuals based on the quality and quantity of their work, their availability and reliability, and their attitude. Dock supervisors are asked to make recommendations for full-time hires when such positions become available. During Burks's tenure at Yellow Transportation, Terminal Manager Scott Korab, General Operations Manager Steve Buckley, and Dock Supervisor and City Operations Manager Derrick Edwards were responsible for determining which casuals would be offered full-time positions. Burks maintains that in order to qualify as a casual, an applicant must pass a physical fitness examination and a forklift operation test. Additionally, Burks states, in order to qualify for consideration as a full-time employee, a casual must pass a drug test. Burks passed the physical

2

fitness examination and the forklift test, which were administered by Steve Buckley, on his orientation day, March 12. Burks took the drug test on May 17, and his managers were notified that he passed the test on May 20.

In 2004, the Cincinnati terminal employed approximately six to ten casual employees and approximately sixty to eighty full-time dockworkers at any given time. In May 2004, Yellow Transportation promoted four white casuals who attended orientations either at the same time as Burks or later.[1] In June 2004, Yellow Transportation promoted seven white casuals and two African-American casuals, all of whom attended orientation sessions after Burks began working for the company.[2] Yellow Transportation asserts that it declined to offer full-time positions to eight white casuals during 2004 for the same or similar reasons as it declined to offer Burks a position.

Burks and Yellow Transportation present conflicting accounts of the initial weeks of Burks's employment at the company. Yellow Transportation maintains that on March 24 and March 25, two weeks after Burks's orientation session, the company called Burks to inform him that there was work available; the company's logbooks show that Burks was marked as being unavailable for work. However, Burks claims that Yellow Transportation did not call him on March 24 and March 25. Rather, Burks asserts, on March 25, he went to the Cincinnati terminal to inquire as to why he had not been called to work. In response to his inquiry, Steve Buckley informed Burks that he had lost

---

[1]Yellow Transportation notes that it promoted one African-American individual from casual to full-time employee on the first day Burks worked, March 26.

[2]The two African-American casuals were promoted on June 13 and 14, several days after Burks complained of discrimination to Scott Korab, *see infra*.

Burks's phone number and told Burks to come to work the next day. Scott Andrews, a full-time dockworker at Yellow Transportation, corroborated Burks's version of these events in an affidavit.

Buckley, Burks asserts, failed to take him seriously from the outset of his employment with Yellow Transportation. Burks testified that on his orientation day, he shared with Buckley that he had aspirations to move upward in the company. Burks stated that he had "a lot to offer" and asked what he could do to improve the company and his position in it. In response, Burks states, Buckley laughed and walked away.

Additionally, Burks explains, he was forced to confront Buckley regarding drug screening, which was a prerequisite to a full-time position. During his orientation, Burks received a "Pre-Employment Drug Screen Notification Form," which he was told not to sign until he received further instruction from Buckley. When Burks discovered that his co-workers had taken the drug test, he confronted Buckley about the test. Buckley then authorized his drug test. Burks signed the drug screen form on May 13, and Buckley and Scott Korab were notified by email on May 20 that Burks had passed the test. Burks notes that his drug test occurred on a later date than the drug tests of the four white employees who were promoted in early May, and he further asserts that the seven white casuals who were promoted in June were also drug screened promptly after their orientation sessions.[3]

---

[3]Burks also contends that his "paperset"—a term Yellow Transportation uses for the paperwork required to approve either a union or non-union hire—was sent to Yellow Transportation's Kansas City office at a later date than the papersets of his white co-workers. His employment application is date-stamped May 27, 2004. Burks does not provide comparable date-stamped employment applications for other employees, however. Burks does note that a former Yellow Transportation human resources specialist testified that a casual's application/"paperset" would normally be sent to Kansas City after a casual had worked at least five days. Burks's employment application was date-stamped after he had worked 22 days at Yellow Transportation. However, there is no evidence of when this application was sent to Kansas City.

4

As noted above, in early May, Yellow Transportation promoted four white casuals who attended either the same orientation session as Burks or a later session. When Burks discovered this, he confronted Buckley once again. Buckley told Burks that he needed notes from two managers recommending him for a full-time position. Burks claims that he obtained the necessary recommendations from two managers; however, there is no record in the company's files or Burks's personnel file of these recommendations.

At some point during Burks's tenure at Yellow Transportation, two full-time dockworkers, Scott Andrews and Gary Jackson, questioned Buckley as to why white casuals with later orientation dates than Burks had been promoted to full-time positions while Burks had not been promoted. Buckley replied that Burks had an "attitude problem."

Burks approached Scott Korab on or about June 4, 2004, and expressed his belief that Buckley was discriminating against him. Korab avers that he spoke with Buckley and other dock supervisors in order to investigate Burks's allegation. According to Korab, the supervisors responded that Burks had not been recommended for a full-time position because he was unreliable and his performance and attitude were poor. Burks also confronted Buckley with his allegation of discrimination, and Buckley told Burks that, in his opinion, Burks was being treated fairly.

Indeed, Yellow Transportation maintains that a number of Burks's supervisors found that his performance and attitude were poor. The company sporadically documented Burks's performance on a comment sheet. The first record on the comment sheet, dated May 18-19, 2004, states that Burks did not put forth "good effort" and lacked the drive to handle carton freight. The record, made by Derrick Edwards, further notes that Burks showed no motivation to perform his job or

5

improve his performance, failed to meet expectations, and did not follow directions. Edwards noted on the comment sheet that he would not recommend Burks for a full-time position.

Additionally, on July 9, 2004, Jack Flaig, a dock supervisor, recorded on the comment sheet that Burks performed his job slowly and had three misloads, which forced other dockworkers to correct Burks's mistakes. Flaig noted that, on three occasions, he had to tell Burks to stop talking with his co-workers and get back to work. Flaig's affidavit also states that he thought Burks had a poor attitude and, at the time of Burks's employment, he did not believe that Yellow Transportation should offer Burks a full-time position.

Buckley's affidavit also recounts that Burks demonstrated a poor attitude at work; specifically, Buckley states that Burks responded very poorly when his mistakes were pointed out and would often become argumentative. Buckley noted that although Burks continually inquired about when he would be offered a full-time position, he ignored directives to improve his performance.

Yellow Transportation also claims that Burks failed to respond on a number of days when the company called him to work. Burks indicated on his employment application that he would be available for work on any day of the week. The company's proffered records show, however, that Burks failed to respond to work calls on March 24, March 25, April 25, August 1, August 6, August 17, August 29, and September 5. As already noted, Burks asserts that he was never contacted on March 24 and March 25 and that he went to the Yellow Transportation on March 25 to inquire as to why he had not been called to work.

Yellow Transportation maintains that when full-time positions became available in May and June, Burks was not promoted because his work record, as described above, was inferior to the work

6

records of other available casuals. The company claims that it continued to employ Burks as a casual because it experienced steadily increasing freight volume during the months in which Burks was employed; thus, the company states, Burks was given the opportunity to improve his work performance.

Burks's last day of work at Yellow Transportation was August 27, 2004. In August, Burks worked only occasionally, and, as explained above, he often did not respond to the company's calls. Burks testified that he "quit" working at Yellow Transportation by not responding to the company's calls for work and by the telling Buckley that he was not going to return. Burks filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 22, 2004, and the EEOC issued Burks a "right to sue" letter on July 26, 2005.

On October 23, 2005, Burks filed a complaint in federal district court, alleging racial discrimination and retaliation claims under Title VII, as well as a state law unlawful termination claim. Yellow Transportation moved for summary judgment, which the district court granted. In its opinion, the district court noted that Burks had abandoned his Title VII retaliation claim and his state law wrongful termination claim by failing to address these claims in responsive briefing. Burks does not pursue these claims on appeal. With respect to Burks's Title VII claim of discrimination on the basis of race, the district court determined that Burks failed to present sufficient evidence demonstrating that Yellow Transportation's proffered nondiscriminatory reasons for failing to promote Burks were pretext for discrimination. Burks filed a timely notice of appeal on February 21, 2007.

II.

7

This court reviews a district court's grant of summary judgment *de novo*. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Summary judgment will be affirmed if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If "a reasonable jury could return a verdict for the nonmoving party," summary judgment for the moving party is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision, this court draws all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A plaintiff may establish a claim of racial discrimination under Title VII by presenting either direct evidence of discrimination or circumstantial evidence supporting an inference of discrimination.[4] *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997)). As no direct evidence of discrimination is present in this case, the court must apply the tripartite burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Michael*, 496 F.3d at 593. Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of demonstrating a *prima facie* claim of discrimination. *Id.* If the plaintiff fulfills this burden, the defendant must put forth a legitimate, nondiscriminatory reason for its employment action. *Id.* Finally, if the defendant meets this obligation, the burden shifts back to the plaintiff to prove that the proffered reason was a pretext

---

[4]Burks's complaint also asserts a claim under 42 U.S.C. § 1981, although his brief fails to mention it. Burks's § 1981 claim is subject to the same analysis as his Title VII claim. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000)).

for race discrimination. *Id.* Throughout the burden-shifting analysis, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *DiCarlo*, 358 F.3d at 415 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

A.

To establish a *prima facie* claim of discrimination based on failure to promote, a plaintiff must show: "(1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020-21 (6th Cir. 2000) (citations omitted). The district court concluded that Burks had proven a *prima facie* case of discrimination, and Yellow Transportation does not appeal this determination.[5]

B.

Once a plaintiff has established a *prima facie* case, the burden then shifts back to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Michael*, 496 F.3d at

---

[5]In its analysis of Burks's *prima facie* case, the district court noted that Burks is African-American and thus a member of a protected class, was qualified for the position, and was rejected for the position. As to the qualification requirement, the district court explained that Burks demonstrated that he passed the necessary physical fitness exam, the forklift test, and the drug screening. In rejecting Yellow Transportation's argument that Burks failed to satisfy the fourth prong of the *prima facie* case—that employees of similar qualifications who were not members of the protected class received promotions—the district court noted that courts "may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*)). Because Yellow Transportation argued that Burks was not similarly situated due to his performance and reliability problems—the company's alleged nondiscriminatory reasons for failing to promote Burks—Yellow Transportation's argument that Burks did not satisfy the fourth prong failed.

593. Yellow Transportation advances three reasons for its failure to promote Burks from casual to full-time employee: (1) Burks had a poor record of availability and reliability because he failed to respond to work calls; (2) Burks performed his job poorly; and (3) Burks had a poor attitude.

Burks argues that Yellow Transportation failed to carry its burden of articulating a legitimate, non-discriminatory reason for its failure to promote him. To this end, Burks, citing the "honest belief" doctrine articulated in *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998), contends that the Sixth Circuit has indicated that an employer is required to present "something more in the way of evidence" than Yellow Transportation has proffered in order to satisfy its *McDonnell Douglas* burden. However, Burks has misread *Smith*. The *Smith* honest belief doctrine is considered *after* the burden has shifted back to the plaintiff to prove pretext. Indeed, in *Smith* itself, the parties and the court accepted that the defendant had articulated a legitimate, nondiscriminatory reason for its employment action; the honest belief doctrine was considered after the burden had shifted back to the plaintiff. *Smith*, 155 F.3d at 805-09; *see also, e.g.*, *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-95 (6th Cir. 2001) (considering the honest belief doctrine after burden shifted back to plaintiff to prove pretext). To the extent that Burks contends that Yellow Transportation's reasons are pretextual under *Smith*, this argument is more properly considered after the burden has shifted back to Burks.

Yellow Transportation has satisfied its burden of production under the second step of the *McDonnell Douglas* framework. The company supports its three proffered reasons for not promoting Burks with affidavits from Burks's supervisors asserting that Burks performed poorly, had a poor attitude, and was unreliable. Moreover, it has submitted evidence in the form of logbooks and Burks's comment sheet in support of its reasons for not promoting Burks. "The defendant need

10

not persuade the court that it was actually motivated by the proffered reasons" in order to fulfill its burden. *Burdine,* 450 U.S. at 254. Accordingly, the burden now shifts back to Burks to prove pretext.

C.

Under the *McDonnell Douglas* framework, if the defendant carries its burden of production, then the plaintiff must "'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). A plaintiff can establish pretext by demonstrating that the defendant's proffered reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews*, 231 F.3d at 1021.

With respect to Yellow Transportation's first proffered reason—Burks's unavailability and unreliability—the district court determined that Burks presented evidence refuting its factual basis and suggesting that it was an insufficient reason for the company's decision not to promote Burks. However, the district court further determined that Burks had failed to produce any evidence refuting Yellow Transportation's assertion that his performance was poor and that he had a bad attitude.

Yellow Transportation contends that the district court erred in its determination that Burks presented evidence creating issues of fact regarding the company's assertion that it failed to promote Burks because of his poor record of availability and reliability. The district court, however, properly concluded that Burks demonstrated the existence of questions of fact with respect to his alleged unreliability. Yellow Transportation maintains that its records show that Burks failed to respond to work calls on March 24, March 25, April 25, August 1, August 6, August 17, August 29, and September 5, and, thus, he was unreliable. The district court correctly noted that Burks's failure to

11

respond to work calls in August and September obviously cannot be used to justify Yellow Transportation's failure to promote Burks in May and June. With respect to the March 24, March 25, and April 25 calls, Burks denies that he ever turned down a work call. Specifically, with respect to the alleged March 24 and March 25 calls, Burks testified that on March 25, he went to Yellow Transportation to inquire as to why he had not been called to work. Burks explained that Buckley said that he had lost Burks's phone number and told Burks to come to work the next day. Burks's account of not having received the March 24 and March 25 calls and his appearance at Yellow Transportation on March 25 is corroborated by the declaration of Scott Andrews, which provides a similar account of the events. Thus, Burks has created an issue of fact regarding the factual basis of his alleged unavailability and unreliability. *See id.*

However, Burks does not present sufficient evidence to rebut Yellow Transportation's two other nondiscriminatory reasons for failing to promote Burks: his poor performance and attitude. Yellow Transportation produced statements from Edwards, Buckley, and Flaig regarding Burks's poor performance and poor attitude. Additionally, the casual comment sheet documents instances of Burks's poor performance. Although Burks's affidavit and testimony indicates that he believed that his job performance was superior to that of the white casuals who were promoted, he presents no evidence beyond his bare assertion to substantiate this claim. While Burks asserts that two managers wrote positive reviews of him, he does not provide these reviews or any testimony from the managers. As this court has explained, "the plaintiff's denial of the defendant's articulated legitimate reason without producing substantiation for the denial is insufficient for a race discrimination claim to withstand a motion for summary judgment." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (citations omitted).

12

As noted above, Burks argues that Yellow Transportation's proffered reasons for promoting Burks did not constitute an "honest belief" that was "reasonably grounded on particularized facts that were before [the employer] at the time of the employment action." *Smith*, 155 F.3d at 806. Under this court's articulation of the so-called "honest belief rule," "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith*, 155 F.3d at 806-07); *see also Braithwaite*, 258 F.3d at 494. Here, Yellow Transportation reasonably relied on particularized facts when it determined that Burks would not be promoted to a full-time position: Burks's supervisors recounted in affidavits and depositions as to his specific instances of his poor performance and poor attitude, and the comment sheet corroborated these claims. As in *Wright*, Burks "has offered no evidence to indicate that [Yellow Transportation] made its decision on grounds other than those offered." *Wright*, 455 F.3d at 709.[6]

Burks also attempts to establish pretext by noting that the May 18-19 remarks on the comment sheet were in "acute temporal proximity" to the day Burks requested drug screening. Although temporal proximity is generally used to show a causal connection between protected

---

[6]Burks attempts to call into question Yellow Transportation's reliance on Burks's comment sheet, which he argues is "fishy" and "suspicious," because we have no comment sheets with which to compare Burks's sheet. Derrick Edwards testified that comment sheets were kept for all casuals. To the extent that Burks contends that Yellow Transportation should have produced other casuals' comment sheets during discovery, this argument should have been made before the district court. "If the Plaintiffs felt dissatisfied with the Defendant's discovery responses, they should have filed a motion to compel in the district court. The Plaintiffs failed to do so. We will not consider arguments not raised below." *Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005) (citing *St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 995-96 (6th Cir. 2003)).

activity and an unlawful employment action in the context of establishing a *prima facie* case for a retaliation claim, *see Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006), this court has noted that temporal proximity can be used as indirect evidence to support a claim of pretext, at least in the context of a retaliation claim, *see id.* at 598. Even if such temporal proximity can be used to support an inference of pretext outside the context of a retaliation claim—Burks has presented no case law to suggest that this is so—"temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for [its employment action] was in fact pretextual." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001). Here, the proximity of Burks's drug test request to the May 18-19 remarks on the comment sheet is simply insufficient, in and of itself, to establish pretext.[7]

It is true, as Burks notes, that "an employer's strategy of simply tossing out a number of reasons to support its employment action in the hope that one of them will 'stick' could easily backfire." *Smith*, 155 F.3d at 809. Burks urges the court to disregard Yellow Transportation's latter two proffered nondiscriminatory reasons for failing to promote him—his poor performance and attitude—because he has created an issue of fact with respect to Yellow Transportation's first proffered reason: his unavailability. Indeed, our court has acknowledged that "'[t]here may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that

---

[7]In the context of his "acute temporal proximity" argument, Burks also briefly contends that Yellow Transportation's continued employment of him after it had recorded his performance problems on the casual comment sheet is also evidence of pretext. However, Yellow Transportation asserts, quite logically, that it continued to call Burks to work because it needed workers to handle the increasing freight volume and that its continued employment of Burks provided him with an opportunity to improve his performance.

14

the plaintiff could withstand summary judgment.'" *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995)).[8]   However, the *Smith* court also noted, with approval, that the Seventh Circuit has held that a plaintiff "'must demonstrate that the employer's reasons (*each of them*, if the reasons independently caused [the] employer to take the action it did) are not true.'" *Id*. at 806 (quoting *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997)) (emphasis in original).  Indeed, in *Smith*, the court concluded that although the plaintiff raised doubt as to one of the employer's two articulated nondiscriminatory reasons, such doubt was not sufficient to call into question the employer's other proffered reasons, as "[t]he two justifications and the sources from which they were derived were separate in nature." *Id.* at 809.

Here, the nondiscriminatory reasons articulated by Yellow Transportation are "separate in nature." *See id.*  Yellow Transportation based its claim that Burks was unreliable on its logbook records, which showed that Burks did not respond to work calls on a number of occasions.  The two other proffered reasons for failing to promote Burks—his poor performance and attitude—were derived from the statements of Burks's supervisors and the comment sheet.  Nor is the character of the first proffered reason so "fishy and suspicious" as to call into doubt the latter two proffered reasons for failing to promote Burks.  Burks only presented evidence that two of those calls—the March 24 and March 25 calls—may not have occurred.  Indeed, Burks's deposition testimony, although somewhat ambiguous, suggests that at the end of his employment, when he "quit," he stopped responding to work calls.  In any case, Burks presented no evidence suggesting that the August and September work calls did not occur.  Thus, given that there is some reason to believe that

---

[8]Under the mistaken belief that this court has not addressed this issue, Burks cites *May v. Pilot Travel Centers, LLC*, No. 2:05-cv-918, 2007 WL 108001 (S.D. Ohio Jan. 5, 2007), for this proposition.

15

Burks, on occasion, was in fact unavailable, Yellow Transportation's proffered reason cannot be deemed so "fishy and suspicious" that the company's other reasons for not promoting Burks must be disregarded.

Throughout his brief, Burks also attempts to revive an argument that was presented to and rejected by the district court: that discovery omissions and misstatements made by Yellow Transportation should be used to support the inference that the company was attempting to conceal its discriminatory intent. As the district court noted, in *Thurman v. Yellow Freight Systems, Inc.*, this court suggested that certain discovery omissions may be evidence of an attempt to hide discriminatory actions. *See* 90 F.3d 1160, 1167 (6th Cir. 1996). In *Thurman*, the defendant failed to disclose a white comparator during discovery, and the existence of this individual was revealed during cross-examination at trial. *Id.* at 1165. Here, however, as the district court explained, Yellow Transportation's discovery mistakes—such as its initial misidentification of the author of the May 18-19 record on the comment sheet—do not rise to the level of the misconduct articulated in *Thurman*. The district court noted that Yellow Transportation corrected its mistakes during the discovery period, and, moreover, some of the alleged problems could have been addressed if Burks had brought them to the court's attention during the discovery period. To be sure, as Burks notes, the district court did not address Yellow Transportation's misstatement before the EEOC. However, the misstatement that Yellow Transportation made to the EEOC was not so egregious that it could be used to support an inference that the company was hiding discriminatory actions. Yellow Transportation submitted a list to the EEOC entitled "New Hire Regular, Full-time Dockworkers,

16

3/1/04 through 8/27/04," but only listed employees hired in June and July. As Yellow Transportation notes, this misstatement was not repeated during the present litigation.[9]

Burks has failed to present sufficient evidence that Yellow Transportation's two remaining proffered reasons for failing to promote him—his poor performance and attitude—had no basis in fact, did not actually motivate Yellow Transportation's decision, or were insufficient to motivate the decision. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). As the district court noted, the only remaining evidence Burks can offer in support of his case is that Yellow Transportation promoted eleven white casuals with less seniority than he during May and June. However, to create an inference of discrimination using this evidence, Burks must also show that the white casuals Yellow Transportation promoted also had similar performance and attitude problems. *See id.* (noting that a defendant's proffered reasons may be deemed pretextual when other employees were not treated in the same way, even though they engaged in substantially identical conduct); *see also, e.g., Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 21-22 (6th Cir. 2007) (explaining plaintiff failed to demonstrate pretext in an age discrimination case where plaintiff came forward with no evidence to show that younger employees who were promoted had "the same or equivalent history of performance and attitude deficiencies as he did"). The mere fact that these individuals were promoted instead of Burks does not, standing alone, present sufficient

---

[9]Contrary to Burks's assertions, nothing else in Yellow Transportation's submission to the EEOC appears to be false. The email from Steve Buckley to Pam Klocksiem, cited by Burks as evidence that the EEOC submission was false, merely notes that Burks "was marked as unable to contact as he did not return work calls after others were moved to probation instead of him." This email simply does not call into question the truthfulness of Yellow Transportation's EEOC submission, which relied on Burks's comment sheet in its representation that Burks was not hired full-time because he was unavailable for work and had performed poorly.

17

evidence to rebut Yellow Transportation's proffered nondiscriminatory reasons for failing to hire Burks.[10]

Finally, Burks appears to contend that the delay in forwarding his paperset and the late administration of his drug test, when compared with the more prompt paperwork forwarding and drug test dates of the eleven white casuals who were promoted in May and June, were sufficient to rebut Yellow Transportation's proffered reasons for not promoting Burks. However, Yellow Transportation has never asserted that its failure to promote Burks was based on incomplete paperwork. Moreover, this argument suffers from the same defect as the evidence that eleven white individuals were promoted instead of Burks: Burks has not shown that these individuals were similarly situated to him. *See, e.g.*, *Manzer*, 29 F.3d at 1084; *Brennan*, 237 F. App'x at 21-22. Conceivably, these individuals were given drug tests more promptly because they did not have the same alleged performance and attitude problems as Burks. The evidence of Burks's later drug screen date and the possible delay in processing Burks's paperset is simply insufficient to rebut Yellow Transportation's remaining proffered, and documented, reasons for failing to hire him: his poor performance and attitude.

III.

The decision of the district court is affirmed.

---

[10]The district court also noted that Burks failed to address Yellow Transportation's promotion of three African-American casuals during his term of employment. Burks does, however, note that two of these individuals were promoted after Burks complained of discrimination on June 4 and the remaining individual was promoted on the day he first worked as a casual; thus, these individuals were outside of the scope of May and June hiring about which Burks complains.