**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0149n.06

Case No. 19-1652

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 12, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSEPH GOODEN, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| KNOLL, INC., | ) | |
| Defendant-Appellee. | ) | **OPINION** |
| | ) | |

BEFORE: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

**McKEAGUE, Circuit Judge.** Joseph Gooden appeals the district court's order granting summary judgment to his former employer, Knoll, Incorporated, on his retaliation claim. Because we find that Gooden failed to create a genuine dispute as to pretext, we affirm the district court's order.

I.

Gooden worked in Knoll's furniture manufacturing plant for about ten years. He wasn't a star employee, but he wasn't a problem employee either. His evaluations reflected that he was a "fully satisfactory" worker whose performance met Knoll's standards. Still, he wasn't a complete stranger to discipline. Over the years, Gooden received warnings for several relatively minor infractions. According to Knoll, this was all typical. During his time at Knoll, Gooden also suffered from some back problems, anxiety, and mental anguish that required him to miss work sometimes.

So he requested intermittent leave under the Family and Medical Leave Act (FMLA) and took an occasional day off every now and then.

But after six years, Gooden started to encounter more significant problems at work. By that time, he was working as a coordinator on the first shift. He started to feel that, as a black staff member, he was required to do more work than the white staff members who held his same position on the second shift. And these other coordinators also received Knoll email addresses, while he did not. Adding insult to injury, he felt like his second-shift coworkers were watching his every move and reporting his every misstep, no matter how minor. He complained to his supervisors, but nothing came of it. Gooden began to think that he was being mistreated because of his race.

In December 2016, at a department meeting, Gooden's supervisor lectured the team about showing up late to standup meetings, which is what Gooden previously did. Gooden got angry: he stood up from his chair, raised his voice to his supervisor, and slammed his chair back into the table. Later that month, he submitted a complaint to the Equal Employment Opportunity Commission (EEOC). In it, he alleged that he was treated differently from his coworkers because of his race. In January 2017, Knoll responded to the EEOC complaint, denying Gooden's allegations. And for a while things were quiet again.

Fast forward to early March. Gooden had a dentist appointment that month. It was Knoll's policy that in order to get his absence excused, he had to tell his supervisors by the end of his shift the day before the appointment. On the day before his appointment, Gooden was unable to find Mike Bourn, his immediate supervisor, before the end of his shift. So he stopped Bourn in the parking lot after work and told him about the appointment. But according to Knoll's policy this was too late; his absence wouldn't be excused.

The next morning, Gooden reminded Bourn about his dentist appointment. Bourn told Gooden that if he went to his appointment, it would hurt his attendance record because the absence wouldn't be excused. Bourn's superior, Kristi Walker, was standing nearby and affirmed that Gooden's absence wouldn't be excused, saying that he had "dropped the ball" by failing to tell them in time. What exactly was said next is a matter of dispute, but by all accounts, it was an antagonistic conversation. There was also apparently a miscommunication: Gooden thought his supervisors understood that he was still planning to leave work for his dentist appointment, while his supervisors were apparently under the impression that he would skip the appointment to avoid his attendance record being docked.

Tensions were high when Walker and Bourn ran into Gooden later that afternoon. They discovered that Gooden had left work for his dentist appointment after all. Walker started to reiterate that Gooden's absence wasn't excused and that his behavior wasn't acceptable. At that point, things escalated. According to Walker and Bourn, Gooden turned abruptly toward Walker and held up his hand, interrupting her and saying "hold up."  Walker stumbled backward, away from Gooden, and knocked over some furniture parts.

Later that day, Gooden was called into the human resources office to meet with the Knoll leadership team. When asked for his version of what happened between him and Walker, he denied that he put his hand up but admitted that he may have turned too quickly toward Walker, causing her to jolt back. He also said that he was the one being intimidated, not the other way around. Gooden was suspended pending an investigation.

After a few days of suspension, Wendi Rudholm, the head of human resources at Knoll, called Gooden at home and asked him to return to work for a corrective review meeting. The meeting started a few minutes late because Gooden was not there. Gooden says it wasn't his fault;

he contends that he arrived at Knoll on time but couldn't get into the building because he turned in his badge when he was suspended. Knoll disagrees. Gooden's supervisors say they knew about Gooden's access problem, so they had Bourn wait by the door for Gooden. And Bourn asserts that he watched as Gooden pulled into the parking lot late. It wasn't a promising start to the meeting, with Rudholm commenting on Gooden's late arrival and Gooden insisting he wasn't late. But the conversation eventually continued past the tardiness issue, and Gooden was convinced to sign a Last Chance Agreement. It said that he had acted in a disorderly and disrespectful manner and that he had to improve his behavior immediately. If he violated any Knoll policies or retaliated against any Knoll employees, then he would be terminated.

The very next day, towards the end of his shift, another hourly employee told Gooden about a "hot part" that needed his attention. According to Gooden, this part was "hot" because it was part of an order that "needed to go out immediately." Gooden knew he had a mandatory cross-shift meeting, but he determined that he should address the "hot part" before going. Without saying anything to a supervisor beforehand, he ended up missing the meeting entirely. Knoll took this to be a violation of his Last Chance Agreement. In late March, Knoll issued Gooden a termination letter that said Gooden was discharged because he was insubordinate (1) when he came late to his corrective review meeting (and denied it) and (2) when he missed his mandatory cross-shift meeting.

In May 2017, Gooden filed another EEOC complaint alleging that Knoll actually terminated his employment in retaliation for Gooden making his first EEOC complaint. In November 2017, the EEOC dismissed his retaliation claim.

Gooden then brought this suit. He alleged that Knoll (1) discriminated against him in violation of Title VII; (2) retaliated against him in violation of Title VII; (3) retaliated against him

in violation of the FMLA. He also alleged violations of Michigan anti-discrimination law. The district court granted summary judgment to Knoll on the federal claims and dismissed Gooden's state law claims without prejudice.

On appeal, Gooden challenges only the district court's ruling on his Title VII retaliation claim. *See* Appellant Br. at 13–14. He argues that there is a genuine question about whether Knoll's reasons for discharging him were pretextual and thus whether it fired Gooden in retaliation for his complaints about racial discrimination. *Id.*

## II.

"We review a district court's grant of summary judgment de novo . . . ." *Miles v. S. Cent. Human Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). Summary judgment is appropriate when there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "In evaluating the motion, we view all facts and inferences in the light most favorable to the non-moving party." *Grace v. USCAR*, 521 F.3d 655, 661 (6th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). But a "mere scintilla of evidence" will not be enough to withstand summary judgment. *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017) (quoting *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007)). When no "rational trier of fact [could] find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

When a plaintiff supports his retaliation claim with circumstantial evidence, we analyze the claim under the *McDonnell Douglas* burden-shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under *McDonnell Douglas*, the plaintiff must first make out a prima facie case of

retaliation. If he succeeds, then the burden of production shifts to the defendant to proffer "some legitimate, non-discriminatory reason for its actions." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's reasons were pretextual. "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.* (quoting *Dixon*, 481 F.3d at 333).

Knoll does not challenge the district court's finding that Gooden successfully made out a prima facie case of retaliation. And Gooden does not dispute that the reasons given by Knoll— that he was late for his corrective review meeting and missed a mandatory cross-shift meeting— are legitimate, non-discriminatory reasons to terminate an employee. So there is only one issue for us on appeal: did Gooden carry his burden in showing that Knoll's reasons for firing him were pretextual? More precisely, did he "produce evidence sufficient that a reasonable finder of fact could reject [Knoll's] proffered reason[s]"? *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007) (quoting *Haughton v. Orchid Automation*, 206 F. App'x 524, 531 (6th Cir. 2006)). We find that he did not.

Plaintiffs typically prove pretext by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

Here, Gooden argues first that one of Knoll's stated reasons for his termination—that he was tardy to his corrective review meeting—had no basis in fact. Appellant Br. at 16. The Knoll supervisors dispute that; they insist that he was late. But this dispute is immaterial because Knoll proffered a second, independent reason for Gooden's termination. *Smith v. Chrysler Corp.*,

155 F.3d 799, 806, 809 (6th Cir. 1998); *see also Burks v. Yellow Transp., Inc.*, 258 F. App'x 867, 875–76 (6th Cir. 2008). And giving Gooden's tardiness to his corrective review meeting as a reason for his termination isn't "fishy and suspicious" enough to call Knoll's other reason into doubt. *Smith*, 155 F.3d at 809.

Next, Gooden argues that Knoll's other reason for his termination—that he missed a mandatory cross-shift meeting—was insufficient to justify his discharge. Appellant Br. at 17–18. Ordinarily, plaintiffs prove pretext under this method by offering evidence of a comparator who wasn't fired for doing the same thing. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779–80 (6th Cir. 2016). Meaning, they introduce evidence that another similarly situated employee, who didn't engage in the protected conduct (and thus wouldn't be an object of retaliation), engaged in substantially identical behavior but wasn't terminated. *See id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Gooden has not done that. In his deposition, he said that Dana Corrigan, another Knoll employee, missed the same cross-shift meeting he did and was not terminated. But he provides no evidence to support this assertion. His brief on appeal doesn't mention Corrigan. And even if we overlooked the lack of corroborating evidence, Gooden admits that Corrigan was not issued a Last Chance Agreement. Thus, Gooden wasn't under the same standard and can't show pretext by comparing himself to Corrigan; they were not similarly situated. *See Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331–32 (6th Cir. 2019); *Malloy v. Potter*, 266 F. App'x 424, 427 (6th Cir. 2008).

Left without a comparator, Gooden tries to show that—notwithstanding his Last Chance Agreement—missing the cross-shift meeting was an insufficient reason to fire him because the meetings were generally unimportant. Appellant Br. at 17. He says that employees requested these

meetings, not Knoll leadership, that the meetings were short, and that they have since been discontinued. But none of this proves that Knoll took the meetings lightly. In fact, the limited evidence in the record suggests just the opposite. There is no question that these meetings were considered mandatory. And Knoll thought they were important enough to address their attendance at a plantwide meeting, and to dock the attendance record of any employee who arrived to them late. Gooden was more than late. He missed the meeting entirely. And, more importantly, he missed the meeting the day after he signed his Last Chance Agreement.

Gooden argues that he had a justification for missing the meeting: he had to work on a "hot part." Appellant Br. at 18. But there is no dispute that the coworker who allegedly asked him to work on the part had no authority to excuse him from the meeting. *Id.* Thus, even if Gooden had a good reason to miss the meeting, he had no good reason for failing to ask his supervisor first.

### III

Gooden was explicitly on his last chance. He was told that any "[a]dditional violations" of Knoll policy or "form of retaliation against other associates" would result in his termination. Yet, the very next day, he missed a mandatory meeting. In light of his Last Chance Agreement, Gooden does not create a genuine dispute as to whether missing the meeting was sufficient reason for Knoll to terminate his employment. Therefore, we affirm the district court's order granting summary judgment.