RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARGARET MULLENDORE,

  *Plaintiff-Appellant*,

  *v.*

CITY OF BELDING, MICHIGAN; DENNIS COOPER,
THOMAS JONES, and MIKE SCHEID, in their official
capacities as members of the City Council of Belding
and in their personal capacities; RONALD GUNDERSON
and JEROME LALLO, in their official capacities as
members of the City Council of Belding,

  *Defendants-Appellees*.

No. 16-2198

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cv-00297—Robert J. Jonker, District Judge.

Argued: April 27, 2017

Decided and Filed: August 23, 2017[*]

Before: MERRITT, BATCHELDER, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Sarah Riley Howard, PINSKY, SMITH, FAYETTE & KENNEDY, LLPL, Grand
Rapids, Michigan, for Appellant. Mary Massaron, PLUNKETT COONEY, Bloomfield Hills,
Michigan, for Appellees. **ON BRIEF:** Sarah Riley Howard, PINSKY, SMITH, FAYETTE
& KENNEDY, LLPL, Grand Rapids, Michigan, for Appellant. Mary Massaron, Josephine A.
DeLorenzo, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellees.

_____

[*]This decision was originally filed as an unpublished opinion on August 23, 2017. The court has now
designated the opinion for full-text publication.

———————

**OPINION**

———————

ALICE M. BATCHELDER, Circuit Judge.   Margaret Mullendore served as the City Manager for the City of Belding, Michigan.   In January 2015, she notified the members of Belding's City Council—all five of whom are defendants—that she would be taking time off due to a surgery and indicated that she would be able to work remotely while recovering.   While she was away from the office, the city council voted to terminate her employment, citing her role in causing political strife in the community.   She sued under the Family and Medical Leave Act (FMLA).   The district court granted summary judgment to the defendants, holding that Mullendore had not given sufficient notice that she would be taking FMLA leave, and that, in any event, the defendants provided a non-discriminatory reason for the termination.   For the following reasons, we AFFIRM the district court's order granting summary judgment to the defendants.

## I. BACKGROUND

Margaret Mullendore was hired as City Manager for the City of Belding, Michigan, in April 2013.   Pursuant to her employment contract and the City Charter, the members of Belding's City Council could vote to terminate her employment at any time, subject to certain severance provisions.   Her contract was renewed several times, including in November 2014, when the City Council voted to extend it by one year to expire in April 2016.   But her tenure as City Manager was not without its speedbumps.   For instance, Mullendore, in conjunction with the police chief, fired a city police officer who was involved in a fight while off-duty and who punched a woman who was eight months pregnant.   The officer was later reinstated, and Mullendore endured the "extremely vocal" criticism of some citizens because of her decision.

As Mullendore states in her brief, "[o]perations of the Belding City Council are fairly described as being somewhat fraught with political drama."   In November 2014, Joe Feuerstein, the City Council member who had made the motion to extend Mullendore's contract through April 2016, lost a recall election for his seat.   Defendant Dennis Cooper won that election.

Cooper had spoken at a City Council meeting earlier in 2014, voicing his displeasure with the direction of the City and advocating for a change in administration.

Cooper specifically wanted the City Council to terminate Mullendore's employment as City Manager. In December 2014, one month after he took his seat as a City Council member, he sent an email to other City Council members and local citizens. In that email, he stated, "It is no secret that I am not in favor of our city manager. She is an at will employee and can be terminated anytime for no reason at all . . . I will push this issue as soon as the charter allows . . . ."[1] Mullendore received a copy of this email within several days, but she did not speak with Cooper about his scheme before the City Council's vote to terminate her.

On January 6, 2015—two weeks before being terminated—Mullendore provided each City Council member with a memorandum entitled "Personal Medical Issue." It read in part:

> As some of you are aware, I sustained an injury to my ankle on October 27, 2014. Initially, this was identified as a significant sprain. However, as it failed to return to normal I was referred to an orthopedic for evaluation. Upon his review, including X-rays and an MRI he found damage that was not going to repair its self [sic] and would only continue to worsen if no remedial action was taken.
>
> . . .
>
> I will be having surgery on January 15th and will be off work until January 27th. Further, I will be limited to crutches and/or a knee wheeler for approximately 12 weeks. On the 26th of this month I will be put into a hard cast but I will not be allowed any weight bearing on my left leg until such time as the hard cast and boot cast (after the removal of the hard cast) are removed. City hall is not ADA compliant and I won't be able to do steps well, if at all. We evaluated using the police department's sergeant's office as that's the only ADA accessible part of the building. Having talked to our insurance company and looking at where I would have to park and going through snow and ice it has been advised by our claims agent that it would be best to work from home. This negates any liability the City would have should I fall trying to get into the building.
>
> This precedent has been established by a previous manager as they [sic] were unable to raise their [sic] head due to a medical procedure and they [sic] worked from home for several weeks. We have a laptop we are setting up to access the

---

[1]The City Charter provides that the City Manager "shall not be removed from office during a period of sixty days following any regular City election except by the affirmative vote of four members of the Council." Cooper determined that January 20, 2015, was the first meeting at which he could put the matter to a vote. Mullendore contests the meaning of this provision, but this is not material to this dispute.

network so that I will be able to work from home easily.  I will schedule meetings that I can attend at the Depot as that is the easiest place for me to access during this time and the weather. I will not be attending the January 20th council meeting as the first ten to twelve days I will not be able to drive and will be on heavy pain medication. Kareen [Thomas, Belding City Clerk,] and I will have the agenda prepared and ready on Wednesday the 14th for council.  Anything that needs extra attention will be presented by the appropriate staff member.  During the time I am off Kareen will be tending to any areas needing my attention.  We will be in constant contact through email, text, phone and FaceTime if necessary.

While I know this is not ideal, no time is the right time to have surgery and prolonging this only makes the diagnosis worse and possibly more in depth resulting in more time off.  I will make sure that there is paperwork in my personnel file to substantiate my statements above.

After the January 6 City Council meeting, Mullendore and Ronald Gunderson, the City's Mayor, met to discuss her plans to work after the surgery.  For instance, Mullendore and the City Clerk determined that they would not put any "major" items on the City Council meeting agenda while she was gone, and the various department heads could contact her if an issue were to arise. Additionally, she and Gunderson discussed the idea of her working from home.  But, according to her deposition testimony, "it was never stipulated or intended or me stating that it would be a typical work week from home.  It would be only on things that demanded immediate attention by me that nobody else could do."  The City did, however, purchase a laptop for her use during her recovery so that she "could remotely access any of [her] files on the network" and for use while planning the City budget.

According to employees gathered at a staff meeting on or around January 6, Mullendore stated that she would not seek medical leave and declined to complete the City's FMLA paperwork.[2]  Becky Schlienz, then the City's finance director, also testified in her deposition that she asked Mullendore a week before this staff meeting if Mullendore wanted "to fill out the [relevant City] paperwork and get approved for FMLA . . . ."  Schlienz gave Mullendore the paperwork and stated that she did the same for any employee who would be out for FMLA-qualifying reasons.  According to Schlienz, Mullendore "said she didn't want to take FMLA because she would just be taking off a few days and working from home."  Schlienz and several

---

[2]Mullendore states in her brief that "she testified she did not recall" making these statements.  She does not, however, provide any record citation for such testimony.

other employees stated in their depositions, however, that they did not discuss Mullendore's comments concerning FMLA with the City Council members.

Cooper moved to terminate Mullendore's employment during the January 20, 2015, City Council meeting, though the motion was not on the agenda before the meeting. The motion passed. Although Defendant Thomas Jones voted in favor of the motion, the district court viewed a video of the meeting and, noting that Jones appeared hesitant to vote to terminate her, suggested that Jones's vote might have been different had Mullendore been at the meeting.

Following her termination, Mullendore sued, alleging violations of the FMLA by the City and the members of the City Council. The suit named Defendants Cooper, Jones, and Mike Scheid in both their individual and official capacities; it named Defendants Gunderson and Jerome Lallo in their official capacities only. The district court granted the defendants' motion for summary judgment from the bench following arguments by the parties. First, the district court found that a reasonable jury could not find that Mullendore's employer was on notice of her intent to take medical leave. Although the district court acknowledged that her memo indicated she would be taking time off for medical reasons, it found that "any reasonable reader of the memo" would find it to be a notification of her medical situation and a statement that she would be working from home. The district court called this an "accommodation," and said that it is "a fundamentally different thing than asking for a formal FMLA leave."

Second, the district court found that even if the memo did constitute sufficient FMLA notice, summary judgment was still warranted because a reasonable fact-finder could not "conclude that the proffered reason for the termination here, which is basically political controversy and distraction, was not the real reason, not a sufficient reason, or in fact had no basis in fact and didn't motivate the termination." The district court recited some of the political background in Belding and found that the termination was not an interference with or retaliation for Mullendore's using her FMLA rights. Accordingly, the district court granted defendants' summary judgment motion. Mullendore timely appealed.

## II. DISCUSSION

"We review de novo a district court's grant of summary judgment." *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir. 2007). Under the Federal Rules of Civil Procedure, summary judgment should be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On appeal, "we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving" party. *Novak*, 503 F.3d at 577 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive summary judgment, Mullendore must put forth sufficient evidence to demonstrate that there is a genuine issue of material fact; "[a] mere scintilla of evidence is insufficient." *Novak*, 503 F.3d at 577 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]here must be evidence on which the jury could reasonably find for the [non-movant].")).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by the Act.]" 29 U.S.C. § 2615(a)(1).[3] An action brought against an employer under this subsection is a claim for FMLA interference. We assess FMLA interference claims under the burden-shifting framework defined by *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447–48 (6th Cir. 2012).

> To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

*Novak*, 503 F.3d at 577–78. "[I]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

---

[3]The FMLA also prohibits employers from discharging or otherwise discriminating "against any individual for opposing any practice made unlawful [by the Act.]" 29 U.S.C. § 2615(a)(2). Although Mullendore raised both interference and retaliation theories in the district court, her brief on appeal does not address retaliation. Therefore, it is waived.

But a plaintiff's success in establishing her prima facie case does not create a strict liability regime for employers, who may offer "a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Jaszczyszyn*, 504 F. App'x at 447. "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008) (quotation marks and citation omitted).

Mullendore fails to demonstrate that there is a genuine issue of material fact. Therefore, summary judgment was proper. Under the FMLA theory of interference, she must demonstrate that the City and the City Council terminated her because she was on FMLA leave. That an adverse employment action occurred while she was on leave does not suffice to demonstrate that the action was "based, in whole or in part, on the fact that the employee took FMLA-protected leave." *Donald*, 667 F.3d at 761. At best, the evidence demonstrates that the members of the City Council terminated her when she was not at their meeting because it was personally or politically expedient to do so behind her back. Without any evidence that the termination—as opposed to the timing of the termination—was because she was on FMLA leave, she cannot show that she was denied benefits to which she was entitled, a key element of her prima facie case. *Novak*, 503 F.3d at 577–78. Had she been on vacation or attending a part-time class, the City Council likely could have taken this action with impunity.

To demonstrate a viable claim, she needed to present more than "a mere scintilla" of evidence that those who terminated her did so because she was on FMLA leave. But she did not. We find that the evidence clearly demonstrates that she was terminated in this way because she was not at the meeting and the City Council could therefore fire her without having to face her. This does not establish that her termination was because she was using FMLA leave, and she does not point to any evidence that creates a genuine dispute as to this fact.

Mullendore raises two arguments in an attempt to demonstrate that there is a genuine issue of material fact sufficient to send this case to a jury. Neither is persuasive.

Her first argument addresses the prima facie case. She argues that her January 6 memo put the City Council on notice that she would be taking an FMLA-qualifying leave. The defendants dispute that this memo was sufficient notice, arguing that it was merely a notice of accommodations she would need to continue working while recovering from surgery. This argument addresses the fourth element of the prima facie case established by *Novak*, whether Mullendore gave the City Council notice of her intent to take FMLA leave. 503 F.3d at 577–78. While we acknowledge that this is a genuine dispute, whether the notice was sufficient is irrelevant in light of our holding that she has not demonstrated that she lost the position because she took FMLA-qualifying leave. Accordingly, this dispute cannot defeat summary judgment.

Her second argument tackles the defendants' proffered reason that the termination was legitimate, and she argues that the district court erred by holding that her termination would have occurred regardless of her having taken FMLA-qualifying leave. The City Council's "legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct" related to the political goings-on in the City. *Grace*, 521 F.3d at 670. Because the defendants offered such a reason, Mullendore "may seek to rebut it by a preponderance of the evidence." *Id.* To do so, she must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quotation marks and citation omitted).

Mullendore does not meet this burden. Her challenge to the City Council's proffered reason for termination addresses whether Belding's political strife actually motivated the termination, but it falls short. She argues that it was not clear when Cooper would try to terminate her, and that Jones "was not always on board with a motion to terminate" her.[4] The defendants respond that the City Council's desire to terminate her arose before she had her surgery and was because they were unhappy with her work and felt she was divisive.

---

[4]She also argues that it is relevant that the City Council failed to terminate (or to try to terminate) the police chief who was part of the City's political strife. This raises no more than "a mere scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, that the defendants' reason for terminating her had no basis in fact, was not the motivating factor behind the conduct, or was insufficient to warrant the conduct.

The problem with Mullendore's theory of her case is that it equates a termination in her absence with a termination because she was absent on FMLA-qualifying medical leave. The former is permissible, even when an employee is on medical leave; the latter is not permissible. *See Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) ("An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."). But she has offered no evidence in support of her claim that she was terminated because she was on FMLA leave, even if the timing of Cooper's motion made it easier to get Jones's vote. At best, her theories raise "a mere scintilla of evidence," which is insufficient to defeat summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 252. Mullendore does not present evidence that the City Council fired her in a way that interfered with her FMLA entitlement, even though the firing occurred while she was out for surgery, so it was not erroneous for the district court to grant summary judgment.

### III. CONCLUSION

Even assuming that Mullendore had notified the City Council that she was on FMLA leave, the City Council could terminate her without violating the interference provision of the FMLA, as long as the reason for termination was not because she was on leave. The City has demonstrated a legitimate reason for terminating her, and she cannot show that it was pretext. For these reasons, we AFFIRM the district court's order granting summary judgment to the City and the members of the City Council.