RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JERREMY P. DYER,

                       *Plaintiff-Appellant*,

    *v.*

VENTRA SANDUSKY, LLC,

                       *Defendant-Appellee*.

No. 18-3802

─────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:16-cv-02817—James G. Carr, District Judge.

Argued: March 13, 2019

Decided and Filed: August 8, 2019

Before: MERRITT, CLAY, and ROGERS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Dennis E. Murray, Jr., MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Appellant. Thomas J. Gibney, EASTMAN & SMITH LTD., Toledo, Ohio, for Appellee. **ON BRIEF:** Dennis E. Murray, Jr., MURRAY & MURRAY CO., L.P.A., Sandusky, Ohio, for Appellant. Thomas J. Gibney, Carrie L. Urrutia, EASTMAN & SMITH LTD., Toledo, Ohio, for Appellee.

─────────────

## OPINION

─────────────

MERRITT, Circuit Judge. In this Family and Medical Leave Act (FMLA) interference suit, 29 U.S.C. § 2615(a)(1), plaintiff Jerremy Dyer seeks damages against his former employer, defendant Ventra Sandusky, LLC, for terminating him under defendant's no-fault attendance

policy. The district court granted defendant's motion for summary judgment. *Dyer v. Ventra Sandusky, L.L.C.*, 317 F. Supp. 3d 953 (N.D. Ohio 2018). For the following reasons, we reverse the judgment of the district court and remand for further proceedings.

**I.**

Defendant Ventra Sandusky is an automotive supplier with a manufacturing facility in Sandusky, Ohio. Ventra Sandusky purchased the Sandusky operation from Ford Motor Company on July 1, 2012, and the Ford employees became Ventra Sandusky employees on that date. Dyer was an hourly, full-time employee working as a "Technician" for defendant Ventra Sandusky. He suffers from migraine headaches that often prevent him from working several days per month. As an hourly employee, Dyer was a member of the United Auto Workers, Local 1216, and therefore subject to the collective bargaining agreement between the union and Ventra Sandusky. The collective bargaining agreement contains a no-fault attendance policy that was in effect throughout Dyer's employment. *See* 2012 Collective Bargaining Agreement at 60-61.

Ventura Sandusky's no-fault attendance policy does not require the employee to justify an absence by presenting a note from his doctor or other equivalent evidence. Pursuant to Ventra Sandusky's no-fault attendance policy, between .5 and 1.5 points are assessed for absences, depending on whether the employee calls in to report the absence and whether the employee is absent for his entire shift or only part of it. *Id*. Progressive discipline is imposed at various thresholds along the point system, and once an employee accumulates 11 or more points, he is terminated. Certain absences, including any leave under the FMLA, are expressly excluded from the point-accumulation system, and it is undisputed that Dyer did not receive any points for taking leave under the Act. It is also undisputed that Ventra Sandusky consistently enforced the policy.

Ventra Sandusky allows employees to reduce the number of accrued absence points as outlined in the "Attendance Point Reduction Schedule," which provides:

> One(1) full point reduction for each rolling 30 day period wherein an employee has perfect attendance. Vacations, Bereavement, Jury Duty, Military Duty, Union Leave and Holidays will count toward the 30 days all other excused absences will not be included. [sic]

Dyer Dep. Ex. B. Under the point-reduction schedule, employees who have perfect attendance for 30 days will have their total points reduced by one point. Taking leave for one of the reasons listed in the point-reduction schedule—vacations, bereavement, jury duty, military duty, union leave and holidays—keeps the 30-day clock running and allows the employee to remain eligible for the perfect-attendance point reduction. In other words, the policy treated paid time off for vacation, bereavement, jury duty, military duty, union leave, and holidays as days "worked" toward the 30-day perfect-attendance requirement, and such absences did not stop or "reset" the 30-day clock. In contrast, the point reduction schedule did not count FMLA leave, and other kinds of unpaid leave such as disability, as days "worked" toward the 30-day perfect attendance streak. For example, if an employee worked three days, took the fourth day off for an FMLA-qualifying purpose and returned to work on the fifth day, his attendance streak restarted at one day worked, rather than four. Conversely, if an employee worked three days, took the fourth day off as a vacation day and returned to work on the fifth day, there was no interruption in his attendance streak and he continued to accrue days towards the 30-day perfect attendance streak and the one-point reduction in total points.[1] In short, while Ventra Sandusky did not *add* points for absence due to FMLA leave, it classified FMLA leave as an absence that "reset" the 30-day perfect attendance clock.

Beginning in 2013, Dyer used intermittent FMLA leave due to migraine headaches. It is undisputed that this medical condition qualifies for leave under the FMLA and that defendant approved all of Dyer's requests for FMLA leave. It is also undisputed that Dyer was not assessed any points for using his leave under the Act. Dyer Dep. at 34-37. Ventra Sandusky terminated Dyer on June 30, 2016, for accumulating 12 points under the no-fault attendance

---

[1]Ventra Sandusky does not require its employees to use or exhaust vacation time in conjunction with FMLA leave, though it permits employees to do so. Collective Bargaining Agreement at 38. If an employee chose to use vacation, or paid leave, in conjunction with FMLA leave, the employee would remain eligible to receive the perfect-attendance reduction. Employees, like Dyer, who chose not to use vacation or other paid leave in conjunction with FMLA absences are not eligible for the perfect-attendance reduction. Cupal Dep. at 37. It is undisputed that Dyer never elected to use vacation time in conjunction with FMLA leave at any point in his employment. Accordingly, all of his FMLA leave was unpaid and he retained paid vacation days. Dyer Dep. at 55-57.

policy.**²**   Dyer brought this action in federal court, and the district court ruled in favor of defendant on summary judgment.  This appeal followed.

## II.

"The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.*, 498 F.3d 561, 569-70 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)).  "At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.* (citing 29 U.S.C. § 2614(a)(1)).  An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the FMLA.  29 U.S.C. § 2615(a)(1).  An employer who violates the FMLA is liable to the employee for damages.  *Hunter v. Valley View Local Schs.*, 579 F.3d 688, 691 (6th Cir. 2009) (citing 29 U.S.C. § 2617(a)(1)).

Our circuit recognizes "two discrete theories of recovery under the FMLA:  (1) the so-called 'interference' or 'entitlement' theory arising from § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012).  Dyer brought his claim under the "interference" theory pursuant to § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and pursuant to § 2614(a)(1), which provides that "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position."

To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as

---

**²**Dyer's union declined to pursue his grievance to arbitration because his termination was not in conflict with the collective bargaining agreement terms.  Dyer has not pursued any action against the union for failing to pursue his grievance or for breaching its duty of fair representation.

defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled. *Demyanovich v. Cadon Plating & Coatings, L.L.C*., 747 F.3d 419, 427 (6th Cir. 2014). The parties agree that Dyer can establish the first four elements of an interference claim. The only issue is whether defendant denied FMLA benefits to Dyer to which he was entitled.

It is considered interference for purposes of the Act for employers to use the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c).[3] To prevail on his FMLA interference claim, Dyer must show that taking FMLA-protected leave was used as a negative factor in defendant's decision to terminate him. The sole issue on appeal is whether Ventra Sandusky's "Attendance Point Reduction Schedule" violates the FMLA by serving as a "negative" factor in defendant's decision to terminate Dyer.

Dyer claims defendant interfered with his rights under the Act because each time he used his approved intermittent FMLA leave, the 30-day perfect attendance clock was impermissibly interrupted and reset, interfering with his ability to reduce accumulated points under the attendance policy. Dyer claims that if defendant treated his FMLA leave the same as vacation, bereavement leave, or the other excluded types of absences listed in the reduction schedule, he would have fewer points on his attendance record and he would not have been terminated. Dyer argues that, due to the nature of his medical condition, he cannot control when he needs to take FMLA leave, and he therefore faced inevitable termination as points accumulated without the same opportunity to reduce them as employees taking non-FMLA leave.

Defendant, in its motion for summary judgment, claims its policy does not interfere with an employee's right to FMLA leave. Instead, it contends that the policy treats FMLA leave the

---

[3]29 C.F.R. § 825.220(c) provides:

> The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies. *See* [29 C.F.R.] § 825.215.

same as equivalent non-FMLA leave for the purposes of its attendance point reduction schedule, which is permissible under the relevant law and regulations.

## III.

The plain language of the FMLA is clear. "At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Bryson*, 498 F.3d at 569-70 (citing 29 U.S.C. § 2614(a)(1)). Therefore, denying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave. Put differently, "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Resetting Dyer's perfect-attendance clock every time he took FMLA leave effectively denied him the flexibility of the no-fault attendance policy that every other employee not taking FMLA leave enjoyed. Dyer was prejudiced by Ventra Sandusky's policy because his ability to remain employed hinged on his not taking FMLA leave. And in fact Dyer was eventually fired due to his inability to achieve "perfect attendance" and thereby reduce his total points. Therefore, a jury could reasonably find that forcing Dyer to choose between taking needed FMLA leave and enjoying the bargained-for terms of his employment relationship improperly interfered with his FMLA rights. *See* 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's [FMLA] rights [] includes . . . discouraging an employee from using such leave."). Although the policy here does not formally hinge point reduction on not taking FMLA leave, the practical result is the same for someone like Dyer who must take frequent intermittent FMLA leave.

Based on the language of the Act and the Department of Labor regulations, point reduction can be viewed as an employment benefit, the accrual of which, like the accrual of other benefits or seniority, must be available to an employee upon return from leave. *See* 29 U.S.C. § 2614(a)(2). The regulations state that "[a]t the end of an employee's FMLA leave, benefits must be resumed in the same manner and at the same levels as provided when the leave began." 29 C.F.R. § 825.215(d)(1). Whereas an employee is not entitled to "accrue any additional benefits or seniority during unpaid FMLA leave[,] [b]enefits accrued at the time leave began . . .

must be available to an employee upon return from leave." *Id.* § 825.215(d)(2). The FMLA defines "employment benefits" expansively to mean "all benefits provided or made available to employees by an employer, including . . . sick leave, [and] annual leave," whether provided by practice or written policy. *See* 29 U.S.C. § 2611(5). Point reduction fits within this definition, because it is both a benefit Ventra Sandusky affords its employees to flexibly manage their absences, and because the reduction of a point effectively awards an additional day of allowed absence, akin to awarding sick leave. Consistent with this approach, the Seventh Circuit has held that "wiping a point off the absenteeism slate is indeed an employment benefit." *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 750–51 (7th Cir. 2010). In other words, Dyer's FMLA leave could freeze the accrual of attendance but could not reset it; upon returning, Dyer was entitled to the days of attendance he had accrued when leave began and to continue accruing them in the same way.

In two separate opinion letters, the most recent of which was issued in August 2018, the Department of Labor applied these regulations to no-fault attendance and point-reduction policies and stated that accrual toward point reduction must, at the very least, be frozen during FMLA leave. In its 1999 opinion letter, the Department of Labor opined that an employer's FMLA obligation to restore an employee to the same or equivalent position includes the obligation to restore the number of days accrued toward absentee point reduction. *See* 1999 FMLA Ltr., 1999 WL 1002428, at *2. It clarified the point by example: "If the employee had 45 days without a recordable [absence] at the time the unpaid FMLA leave commenced, the employer would be obligated to restore the employee to this number of days credited without an [absence]." *Id.* In 2018, the DOL reaffirmed the point, approving a policy under which "the number of accrued points remains effectively frozen during FMLA leave." *See* 2018 FMLA Ltr., 2018 WL 4678694, at *2. Although these letters are not binding, they are entitled to persuasive effect. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000).

Ventra Sandusky argues that until an employee has reached the 30-day mark, he has accrued no *benefit*—benefit being the actual reduction of an absence point—so there can be no benefit to be restored upon returning. Ventra Sandusky's reading would allow employers to discourage FMLA leave by creating high thresholds for point reduction that could never

realistically be met by anyone taking such leave. For these reasons, a jury could find that Ventra Sandusky's policy interfered with Dyer's FMLA rights by not freezing the accrual of perfect attendance during his leave.

In addition, Ventra Sandusky is not entitled to summary judgment if FMLA leave is treated less favorably than other equivalent leave statuses. The district court held that the policy did not violate the Act because "equivalent" non-FMLA leave also interrupts the 30-day window. But, under Ventra Sandusky's policy, there is a disputed issue of material fact as to what constitutes "equivalent" leave and whether any equivalent leave statuses similarly reset the point-reduction clock. Although neither the FMLA nor its implementing regulations define "equivalent leave status," the regulations imply that equivalency turns on whether the leave is paid or unpaid. For example, in describing the equivalency principle, the regulations state that "if an employee *on leave without pay* would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on *unpaid FMLA leave*." *See* 29 C.F.R. § 825.220(c) (emphasis added). At her deposition, Ventra Sandusky's employee, Catherine Cupal, stated that under the collective bargaining agreement, active duty military leave and some forms of union leave are both unpaid leave and yet, unlike FMLA leave, they do not restart the 30-day point-reduction clock. At the very least, then, it is a disputed issue of material fact whether active military leave and some forms of union leave are equivalent unpaid leave statuses that are treated more favorably than FMLA leave.

**Conclusion**

We reverse and remand the district court's grant of Ventra Sandusky's summary judgment motion because a jury could find that Ventra Sandusky's no-fault point-reduction scheme interfered with Dyer's right to take FMLA leave and be restored to an equivalent position with equivalent benefits and other terms and conditions of employment upon return to work. Restarting the 30-day period for eliminating one attendance demerit for intermittent FMLA leave punishes the employee for taking that leave, even though the FMLA leave itself does not count toward the 11-point limit. A jury could find that, by not resetting Dyer's 30-day perfect attendance clock after he returned to work after taking FMLA leave, Ventra Sandusky failed to restore his accrued employment benefits as required by the FMLA. What's more, even

if Ventra Sandusky could avoid liability by showing that equivalent leave statuses similarly reset the 30-day clock, there is a dispute of material fact regarding whether it treats unpaid forms of military leave and union leave the same.

The judgment of the district court is reversed, and the case is remanded for further proceedings.