NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0181n.06

Case No. 22-5801

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 21, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TANYA CLEMENT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| THE SURGICAL CLINIC, PLLC, | ) | |
| Defendant-Appellee. | ) | O P I N I O N |
| | ) | |

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Tanya Clement worked as a medical assistant at The Surgical Clinic, PLLC ("TSC") for several years. Following the coronavirus outbreak in March 2020, Clement took time off under the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), Pub. L. No. 116-127, §§ 3101 *et seq.*, 134 Stat. 178, 189–92 (2020). Clement alleges that when she attempted to return to work following her leave, TSC interfered with benefits to which she was entitled under the EFMLEA. Specifically, she claims that TSC refused to reinstate her to the same or equivalent position she held before taking leave. Clement now appeals the district court's decision granting summary judgment to TSC on her EFMLEA interference claim. For the reasons outlined below, we AFFIRM.

I.

TSC owns and operates more than 20 medical clinics in Middle Tennessee. Its clinic in downtown Nashville (the "downtown clinic") is its largest and busiest location. TSC hired Clement as a full-time medical assistant in the downtown clinic in 2018. Clement primarily assisted one doctor with his patients, but also worked in triage and with other doctors in the office.

Prior to the novel coronavirus ("COVID-19") pandemic, TSC provided some of its employees, including Clement, with flexible work schedules. This flexibility permitted Clement to (1) attend college classes during working hours and begin her shifts at 10:00 a.m. on those days (which required TSC to arrange for coverage in her absence), and (2) start her shifts at 8:00 a.m. rather than 7:30 a.m. (apparently the standard start time) on days she was not in school to accommodate her childcare drop-off responsibilities. Her customized schedule reportedly "put a hardship on [TSC], but [they] made it work." Clement's colleague, Analine Jimenez, also worked a flexible schedule so she could attend school during working hours.

In March 2020, the World Health Organization declared COVID-19 a global pandemic. *See COVID-19 Timeline*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/museum/timeline/covid19.html (last visited Apr. 19, 2023). Congress passed the EFMLEA as part of its response to employment challenges stemming from the pandemic. Clement took protected leave under the EFMLEA for reasons related to the pandemic and was out of the office for about two months. She emailed her supervisor, Gabrielle Taylor, and TSC's Human Resources manager, Lindsey Ochoa-Ryan, in May 2020 about returning to work. Her email about returning prompted internal discussions at TSC about potential terms of Clement's reinstatement. Foremost, TSC wanted to both revisit Clement's school schedule agreement, which had become impractical during the pandemic, and adjust some of her job responsibilities. Taylor

emailed Clement with conditions of her reinstatement at the downtown clinic a couple of days later. The new conditions included the following:

> **Attendance/Working [H]ours:** Regarding the prior agreement with your working hours and accommodations for school it will be null *until COVID is over. Due to the demand at the clinic* your new working hours will be 7:30AM–4PM [rather than 8:00 a.m.–4:30 p.m.] . . . .
>
> **Your New Position at [the Downtown Clinic]:** Upon your return you will be the *fulltime triage medical assistant* for the 3rd and 4th floor[s], helping up front with incoming phone calls if need be as well as participating in training people. I will allow you to assist in [Dr.] Rosen's clinic on Monday [i]f they need assistance that day.

(Emphasis added). Clement rejected these terms. She believed that the new position was not equivalent to the one she held prior to taking leave. She asserted that it would be impossible for her to work the hours required of her given how they would interfere with her personal obligations (i.e., her school schedule and childcare drop-off time). She also took issue with being a full-time triage medical assistant. According to Clement, she previously worked directly for a particular physician and had greater, more varied, responsibilities—which included managing patients' charts, handling the doctor's phone calls, and working alongside a nurse. By contrast, triage is limited to measuring patients' vital signs and blood pressure and taking them to their doctor visits. For its part, TSC claims that it assigned Clement to triage simply as a matter of business need. The downtown clinic was short-staffed during the pandemic and was "barely holding it together." So, for the sake of stability, TSC wanted someone working triage full-time instead of having medical assistants cover various roles.

Clement later met with TSC leadership, including Ochoa-Ryan, about her concerns. After this conversation, Ochoa-Ryan looked for alternatives to which Clement might agree.

Ochoa-Ryan reached out to another nearby TSC facility, The Vein Centre,[1] to see if their office could accommodate Clement's schedule needs. The Vein Centre is one of TSC's various branch locations similar to the downtown clinic. Staff there responded positively to Ochoa-Ryan's inquiry, indicating that they could onboard Clement and work around her schedule.

Around this same time, however, TSC decided that it could no longer accommodate any employee's school schedule if it interfered with their working hours. This was because permitting employees to leave during the workday "put [an] undue burden" on TSC's operations due to the COVID-19 pandemic. The change was a matter of company-wide policy. It affected all employees regardless of whether they worked at TSC's downtown clinic or at The Vein Centre. In her deposition testimony, Clement acknowledged that TSC's decision to stop accommodating school schedules stemmed directly from issues caused by the pandemic.

Ultimately, TSC offered Clement a medical assistant position at The Vein Centre with the same pay and benefits as before. The Vein Centre also agreed to permit Clement to start her shifts at 8:00 a.m. (rather than 7:30 a.m.) as she preferred. But in keeping with TSC's company-wide, pandemic-era policy, The Vein Centre could not accommodate Clement's school schedule. Clement declined the offer to work at The Vein Centre and resigned from her position at TSC— testifying that the ultimate reason for her resignation was the school scheduling conflict. Clement's coworker, Jimenez, also left the company around this time for the same reason.

Clement filed suit in Tennessee state court, bringing various EFMLEA and state law claims against TSC. TSC timely removed to the United States District Court for the Middle District of Tennessee. TSC moved for summary judgment after the close of discovery. The district court

---

[1] The record variously refers to The Vein *Centre* and The Vein *Center*. We adopt the former spelling (Centre) because it appears to be the most accurate one.

granted TSC's motion and entered judgment in its favor. In relevant part, the court held that Clement stated a *prima facie* EFMLEA interference claim, but her claim failed because she could not establish that TSC's reason for its decision was pretextual. It also found that TSC would have revoked Clement's flexible work hours even if she had not taken leave.

Clement timely appealed. She challenges the district court's decision only as to her EFMLEA interference claim.

## II.

On March 18, 2020, Congress enacted the Families First Coronavirus Response Act ("FFCRA") in response to the emergent COVID-19 pandemic. *See* Pub. L. No. 116-127, 134 Stat. 178 [hereinafter "FFCRA"]; Paid Leave Under the FFCRA, 85 Fed. Reg. 19326-01, 19326 (Apr. 6, 2020) (to be codified at 29 C.F.R. pt. 826). One of the major provisions of the FFCRA was the Emergency Family and Medical Leave Expansion Act, or EFMLEA. *See* FFCRA §§ 3101 *et seq.* The EFMLEA temporarily amended Title I of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, to permit certain employees to take up to twelve weeks of expanded leave for reasons related to the coronavirus outbreak. FFCRA § 3102(a); *see also* 29 U.S.C. § 2612(a)(1)(F). More specifically, the EFMLEA expanded protected leave to employees who were unable to work or telework because their child's school or place of care closed due to COVID-19, or their childcare provider was unavailable due to the same. FFCRA § 3102(b); *see also* 29 U.S.C. § 2620(a)(2).

The EFMLEA's implementing regulations state that "[t]he prohibitions against interference with the exercise of rights, discrimination, and interference with proceedings or inquiries described in the FMLA . . . apply to Employers with respect to Eligible Employees taking, or attempting to take, leave under the EFMLEA." 29 C.F.R. § 826.151 (effective Apr. 2, 2020

through Dec. 31, 2020) (citing 29 U.S.C. § 2615). The regulations further adopt the FMLA's enforcement provisions, which include a private right of action. *Id.* (citing 29 U.S.C. § 2617). In sum, the regulations provide that the FMLA's provisions apply with equal force to the EFMLEA.

## III.

We review the district court's grant of summary judgment *de novo*. *Render v. FCA US, LLC*, 53 F.4th 905, 913 (6th Cir. 2022). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing FED. R. CIV. P. 56(c)). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Render*, 53 F.4th at 913 (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). We construe the evidence and afford "all reasonable inferences" in favor of the nonmoving party in our review, *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013)), though we do not weigh the evidence or render credibility determinations, *Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed.").

## IV.

The EFMLEA, like the FMLA, recognizes two theories of civil liability: "an interference (or entitlement) theory and a retaliation (or discrimination) theory." *See Hunter v. Valley View Loc. Schs.*, 579 F.3d 688, 691 (6th Cir. 2009); *see also* 29 C.F.R. § 826.151. Clement pursues only an EFMLEA interference theory on appeal, which applies when an employer attempts to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's EFMLEA leave rights. 29 U.S.C. § 2615(a)(1); *see* 29 C.F.R. § 826.151(a); *see also*

*Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 476 (6th Cir. 2019) (explaining an FMLA interference claim). We apply the *McDonnell Douglas* burden-shifting framework to FMLA, and thus EFMLEA, interference claims. *See, e.g.*, *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017); *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447–48 (6th Cir. 2012); *Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of interference. *E.g.*, *Donald*, 667 F.3d at 761. If the plaintiff establishes a *prima facie* claim, then the burden shifts to the employer to provide a legitimate reason for its challenged conduct. *Id.* at 761–62. The plaintiff may rebut the employer's proffered justification by demonstrating that the stated reason is merely pretextual. *Id.* at 762.

Before proceeding to an analysis under this standard, we first dispense with an alternative argument Clement offers. In particular, Clement contends that the *McDonnell Douglas* burden shifting framework is inapposite to her EFMLEA interference claim and that the district court wrongly applied it below. She asserts that *McDonnell Douglas* is used in other contexts to probe a defendant's intent, and intent is irrelevant to EFMLEA interference claims. Although Clement is correct that she need not show TSC's bad intent to prevail on her claim, *see, e.g.*, *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 384 (6th Cir. 2017), binding precedents nonetheless foreclose her argument. In *Donald*, we explained that the *McDonnell Douglas* burden shifting test applies to FMLA interference claims under the law of this circuit. 667 F.3d at 762 (citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)). Since Clement's position fails as a matter of law, we need not address TSC's argument that she waived it in the proceedings below.

A.

To establish a *prima facie* case of EFMLEA interference, Clement must show that (1) she was an eligible employee; (2) TSC was a covered employer under the EFMLEA; (3) she was entitled to EFMLEA leave; (4) she notified TSC of her intent to take leave; and (5) TSC denied or interfered with EFMLEA benefits to which she was entitled. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 572 (6th Cir. 2023) (quoting *Donald*, 667 F.3d at 761); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (noting that "[t]he burden of proof at the prima facie stage is minimal" (citation omitted)). The parties agree that Clement satisfied the first four elements. Their dispute centers on whether TSC interfered with Clement's right to reinstatement upon her return from leave.

The EFMLEA entitles qualified employees to reinstatement to the same position they held prior to taking leave—or, at least, to an "equivalent position." 29 C.F.R. § 826.130(a) (effective Apr. 2, 2020 through Dec. 31, 2020) (incorporating FMLA provisions set forth in 29 C.F.R. §§ 825.214–15); *see also Dyer*, 934 F.3d at 476; *Hunter*, 579 F.3d at 690. An equivalent position is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status" and which "involve[s] the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). Among other things, employees are generally entitled to work the same or an equivalent work schedule upon their return from leave. *Id.* § 825.215(e)(2). That said, "[t]he requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to de minimis, intangible, or unmeasurable aspects of the job." *Id.* § 825.215(f).

Clement argues that TSC refused to reinstate her to the same or an equivalent position following her leave. Specifically, she asserts that TSC (1) significantly diminished her job duties by, *inter alia*, assigning her to triage full-time; (2) changed her start time from 8:00 a.m. to 7:30 a.m.; and (3) refused to honor her school schedule any longer. We address each of Clement's alleged forms of interference below.

Clement's arguments regarding the first two categories of alleged interference—her new job responsibilities and 7:30 a.m. start time—fail because they are based on an incomplete view of the facts. Although TSC's *initial* offer conditioned her return to the downtown clinic in those ways, the discussion about her return to work did not end there. Indeed, because Clement objected to TSC's first overture, TSC sought to address her concerns by offering to place her at The Vein Centre where she would not be limited to triage responsibilities and could start her workday at 8:00 a.m.

Clement urges the court to disregard TSC's second offer of reinstatement pertaining to The Vein Centre and instead limit our review of her claims to the *first* offer TSC made. But we are aware of no authority suggesting that an employer's offer that it later revises is binding for purposes of establishing interference. On the other hand, it is well-established that plaintiffs must prove they suffered harm from an employer's interference with their statutory rights. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)); *see also Vonderhaar v. Waymire*, 797 F. App'x 981, 990 (6th Cir. 2020). To assess harm, we must evaluate the employer's action that prompted the employment outcome, and it would seem that early offers would be superseded by the final offer on which the plaintiff was required to act. Notably, we have also consistently held that "the FMLA is not a strict-liability statute." *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 483

(6th Cir. 2010) (quoting *Edgar*, 443 F.3d at 507). Yet, Clement's first-offer approach tends toward strict liability in that it would deprive even the most well-meaning employers the opportunity to course-correct from potential EFMLEA violations—for example, by returning to the table with their employees to work out acceptable terms of employment. Clement offers no reason for us to hold otherwise.

The question then is whether the position offered to Clement at The Vein Centre was the same as or equivalent to the position she previously held at the downtown clinic. To be considered equivalent, an employee's new role must be identical in pay, benefits, and working conditions. 29 C.F.R. § 825.215(a). There is no dispute that Clement's compensation and benefits would have gone unchanged following a transfer to The Vein Centre. What's more, Clement would have continued working as a medical assistant at The Vein Centre, which is located a short distance away from TSC. And although she argues that TSC's *first* reinstatement offer entailed substantially altered job duties (in that TSC would have assigned her to triage full-time, for example), she makes no effort to establish how or why TSC's *final* offer suffered from the same shortcomings. Nor has she developed any argument on appeal that working at The Vein Centre, in and of itself, would deprive her of an equivalent position. Thus, even viewing the facts in the light most favorable to Clement, nothing suggests that the position at The Vein Centre would have involved anything less than "the same or substantially similar duties and responsibilities" as Clement's previous role. And TSC agreed to accommodate her preferred 8:00 a.m. start time at The Vein Centre—a fact which Clement concedes. Thus, no reasonable factfinder could determine that her pre- and post-leave positions were inequivalent in this regard. *See id.* § 825.215(e)(2). As such, there is no genuine issue of material fact on whether TSC offered her the same or an

equivalent position following her leave with respect to the first two forms of interference Clement claims. *See id.* §§ 825.215(a), 826.130(a). These claims fail at the *prima facie* stage.

Finally, we turn to the third category of interference Clement asserts. Before her EFMLEA leave, TSC permitted Clement to attend her college courses during working hours and signed a written agreement to that effect. However, it refused to honor that agreement when she returned from leave. The district court held that this series of events raised a question of fact as to whether TSC restored Clement to the same or an equivalent position at the company. We agree. 29 C.F.R. § 825.215(e)(2) provides that employees are generally entitled to "the same or an equivalent work schedule" following leave. There is no dispute that TSC did not allow Clement to work the same schedule she had before her EFMLEA leave. And TSC's proposed altered schedule, excluding time away during the workday to attend classes, made it impossible for her to balance her school and work obligations—ultimately leading to her resignation from TSC. We thus cannot say that this schedule change was *de minimis* as a matter of law. *See id.* § 825.215(f). Instead, there is a genuine issue of fact as to whether the new hours Clement was required to work post-EFMLEA leave constituted an "equivalent work schedule." *See Dyer*, 934 F.3d at 476 ("[D]enying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave."). Clement therefore stated a *prima facie* case of EFMLEA interference.

B.

Because Clement presented sufficient evidence to prove a *prima facie* case, the burden shifts to TSC to articulate a legitimate reason for revoking Clement's schedule flexibility. Critically, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 421 (6th

Cir. 2014) (quoting *Edgar*, 443 F.3d at 508) (internal quotation marks omitted); *see also Grace*, 521 F.3d at 670 (stating same). The FMLA relatedly provides that it "shall [*not*] be construed to entitle any restored employee to . . . any right, benefit, or position of employment *other than* any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B) (emphasis added); *see also Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 825 (6th Cir. 2002). Thus, employees who request FMLA or EFMLEA leave "have no greater protection against [their] employment being terminated for reasons *not* related to [their EFMLEA] request than [they] did before submitting that request." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (emphasis added) (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)); *see also Grace*, 521 F.3d at 669 (quoting *Hoge*, 384 F.3d at 245). This means a plaintiff has no actionable interference claim if her employer can show that it would have made the same decision at issue even had the employee *not* exercised her EFMLEA rights. *Millen v. Oxford Bank*, 745 F. App'x 609, 618 (6th Cir. 2018); *Mitchell v. Cnty. of Wayne*, 337 F. App'x 526, 532 (6th Cir. 2009); *Arban*, 345 F.3d at 401; *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407–08 (6th Cir. 2003).

TSC offers a legitimate reason for revoking Clement's flexible schedule arrangement. It cites the "extreme challenges" it faced while navigating the early COVID-19 pandemic—and asserts that it would have made the same decision to change Clement's schedule regardless of her leave. Evidence in the record bears this out. TSC employees testified that accommodating Clement's school schedule "put a hardship on [TSC]" even *before* the pandemic. Then, after the COVID-19 outbreak in March 2020, TSC staff had to balance increased demand at their clinics with staffing shortages. Under these circumstances, TSC concluded it could no longer permit staff to leave the office during working hours for school. It therefore enacted a company-wide policy

prohibiting flexible school and work schedules. This pandemic-related change was not specific to Clement and would have occurred regardless of her EFMLEA leave. Therefore, TSC proffered a legitimate justification for its decision. *E.g.*, *Arban*, 345 F.3d at 401 (explaining that employees are entitled to no greater protection against employment actions that would have occurred regardless of their leave); *Chandler*, 283 F.3d at 825 (same) (citing 29 U.S.C. § 2614(a)(3)(B)). *Cf. Hodnett v. Chardam Gear Co.*, 749 F. App'x 390, 394 (6th Cir. 2018) (explaining that a defendant need only offer "what appears to be a legitimate explanation" for its challenged action) (quoting *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998)).

C.

With TSC's articulation of a legitimate reason for its change in Clement's work schedule, the burden shifts to Clement to establish that its purported reason was pretextual. She can do so by showing that TSC's claimed reason (1) has no basis in fact, (2) did not actually motivate its action, or (3) was insufficient to motivate the action. *Mullendore*, 872 F.3d at 328 (citation omitted). Clement argues, in relevant part,[2] that a jury could conclude that TSC's pandemic-related justification was false or did not actually motivate its decision to revoke her schedule arrangement.

Clement first points to Taylor's email in May 2020 setting forth the initial terms of her reinstatement. She contends this message illustrates that TSC's stated reason for revoking her flexible work schedule (the pandemic) was untrue because it "makes no mention of COVID impacting schedules of the needs of the clinic." Yet, Taylor's email *expressly* connects the change

---

[2] Clement only stated a *prima facie* case based on the changes made to her schedule, which TSC justified on the basis of COVID-19. Accordingly, we need not reach the parties' arguments concerning employee complaints lodged against Clement in early 2020. They are irrelevant to the scheduling issue.

in Clement's working hours to the pandemic and demand at the downtown clinic. This evidence thus does not undermine the veracity of TSC's proffered reason for altering Clement's schedule.

Clement also contends that emails exchanged between TSC managers show they did not intend to let her return to work after her leave. For example, she cites an email sent by Ochoa-Ryan in which Ochoa-Ryan states that "[TSC] should have never let [Clement] dictate her schedule and now [the pandemic] is the out." But read in context, the message belies Clement's argument. As Ochoa-Ryan further explained:

> [T]hese are unusual circumstances with the pandemic [so] no school schedule agreements need to be honored. . . . We reserved the right to revoke the [school schedule] agreements at any time[,] and we are [now] because [the downtown clinic's] needs currently dictate that [Clement must] work[] the schedule that is needed. We are still in a pandemic after all.

This evidence does not tend to show that TSC's claimed reason for revoking Clement's schedule agreement was pretextual. It instead *lends support* to TSC's position by linking the "unusual circumstances" presented by the pandemic with its need to revoke Clement's schedule agreement. And, significantly, the record shows that Clement was not the only TSC employee affected by the scheduling decision. Her colleague, Jimenez, resigned from TSC because of conflicts between school and work, which also stemmed directly from TSC's new policy. This fact seriously undermines Clement's argument that TSC used scheduling changes as a means of forcing her out. Because the change in policy applied to all employees at all TSC locations—and even led another employee, aside from Clement, to quit—no reasonable jury could find that it was implemented as a pretext to terminate her.

Clement also urges us to reject TSC's pandemic justification because "COVID is not a magic bullet" that gives employers carte blanche in their decision-making. Clement's point is well-taken. Employers must set forth a *legitimate* justification for their actions which interfere

with their workers' EFMLEA rights. *E.g.*, *Mullendore*, 872 F.3d at 327; *Edgar*, 443 F.3d at 507–08. There certainly may be cases for which the pandemic lends no legitimate justification to an employer's actions; COVID-19 is not a failsafe. Nonetheless, Clement offers no evidence tending to show that TSC's COVID-19-related justification for its actions *in this case* was pretextual. To the contrary, Clement acknowledges that the pandemic altered TSC's day-to-day needs and made it "incredibly hard" to manage healthcare facilities. According to TSC, that is precisely why it made a company-wide decision to no longer offer flexible work hours to employees pursuing their education. Ultimately, TSC's decision stymied Clement's ability to return to work following her leave. But Clement makes no showing that the challenges COVID-19 posed to TSC's operations were insufficient to warrant the work schedule policy change.

Clement has not presented evidence showing a genuine issue of material fact as to whether TSC's reason for revoking her flexible schedule arrangement (COVID-19) was pretextual. We therefore conclude that the district court properly granted summary judgment in favor of TSC on Clement's interference claim. *E.g.*, *Demyanovich*, 747 F.3d at 431 (citing *Edgar*, 443 F.3d at 508); *Seeger*, 681 F.3d at 281.

V.

For the reasons discussed, we therefore AFFIRM the district court's order granting TSC's motion for summary judgment.